## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**NATHAN JAMES MASSARELLO**,

*Plaintiff*,

v.

**POWER HOME REMODELING GROUP, LLC**,

*Defendant*.

Judge Robert J. White

Mag. Judge Curtis Ivy, Jr.

Case No. 24-CV-12480

## DEFENDANT POWER HOME REMODELING GROUP, LLC'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

Gerald L. Maatman, Jr. (IL Bar No. 6181016)
Jennifer A. Riley (IL Bar No. 6272366)
Ryan T. Garippo (IL Bar No. 6342203)
DUANE MORRIS LLP
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone:  (312) 499-6700
Facsimile:  (312) 499-6701
Email:  gmaatman@duanemorris.com
Email:  jariley@duanemorris.com
Email:  rgarippo@duanemorris.com

Joseph A. Ciucci (P48624)
DUANE MORRIS LLP
1075 Peachtree Street, Suite 1700
Atlanta, Georgia 30309
Telephone:  (404) 253-6988
Facsimile:  (404) 393-0744
Email:  ciucci@duanemorris.com

***Attorneys for Defendant***

Defendant Power Home Remodeling Group, LLC ("PHRG" or "Defendant"), by and through its attorneys, DUANE MORRIS, LLP, respectfully moves this Court to dismiss Plaintiff Nathan James Massarello's ("Massarello" or "Plaintiff") First Amended Class Action Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support of this request, PHRG states as follows:

1.     Plaintiff's claim under the Telephone Consumer Protection Act ("TCPA") fails as a matter of law because Plaintiff makes clear on the face of the Amended Complaint that he is not the "called party."  As a result, his consent is irrelevant to the analysis and his claim fails as a matter of law.  47 U.S.C. § 227(b)(1)(A).  Consequently, the Court should dismiss Plaintiff's claim for alleged violation of the TCPA.

2.     The Court should reject Plaintiff's argument that only he can qualify as a "called party" within the meaning of the statute.  Such an interpretation would ignore the plain language of the statute, lead to absurd results, and run counter to the Third Circuit Court of Appeals' interpretation of the TCPA.

3.     Pursuant to E.D. L.R. 7.1(a)(2)(A), prior to filing this motion, counsel for Defendant conferred with counsel for Plaintiff to request that Plaintiff dismiss the Amended Complaint and withdraw his claim for treble damages.  The parties did not reach concurrence as to dismissal, however, during the course of that conferral, the parties agreed that Plaintiff would withdraw his request for treble damages.  As

a result, the parties are currently finalizing a joint motion to ask the Court to withdraw Plaintiff's request for treble damages from the Amended Complaint.

WHEREFORE, PHRG respectfully requests that this Court grant its motion to dismiss the Amended Complaint for failure to state a claim and grant it any other relief it deems just and proper.

**Dated:  October 9, 2024**                    Respectfully Submitted,

                                                                  POWER HOME REMODELING
                                                                  GROUP, LLC

                                                                  By:  *s/ Gerald L. Maatman, Jr.*
                                                                            One of its Attorneys

Gerald L. Maatman, Jr. (IL Bar No. 6181016)
Jennifer A. Riley (IL Bar No. 6272366)
Ryan T. Garippo (IL Bar No. 6342203)
DUANE MORRIS LLP
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone:  (312) 499-6700
Facsimile:  (312) 499-6701
Email:  gmaatman@duanemorris.com
Email:  jariley@duanemorris.com
Email:  rgarippo@duanemorris.com

Joseph A. Ciucci (P48624)
DUANE MORRIS LLP
1075 Peachtree Street, Suite 1700
Atlanta, Georgia 30309
Telephone:  (404) 253-6988
Facsimile:  (404) 393-0744
Email:  ciucci@duanemorris.com

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**NATHAN JAMES MASSARELLO**,

    *Plaintiff*,

    v.

**POWER HOME REMODELING GROUP, LLC**,

    *Defendant*.

Judge Robert J. White

Mag. Judge Curtis Ivy, Jr.

Case No. 24-CV-12480

---

## DEFENDANT POWER HOME REMODELING GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Gerald L. Maatman, Jr. (*pro hac vice*)
Jennifer A. Riley (*pro hac vice*)
Ryan T. Garippo (*pro hac vice*)
DUANE MORRIS LLP
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone:  (312) 499-6700
Facsimile:  (312) 499-6701
Email:  gmaatman@duanemorris.com
Email:  jariley@duanemorris.com
Email:  rgarippo@duanemorris.com

Joseph A. Ciucci
DUANE MORRIS LLP
1075 Peachtree Street, Suite 1700
Atlanta, Georgia 30309
Telephone:  (404) 253-6988
Facsimile:  (404) 393-0744
Email:  ciucci@duanemorris.com

***Attorneys for Defendant***

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF ISSUES PRESENTED............................................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........................... vii

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

I.     POWER HOME REMODELING GROUP CALLS THE "WRONG
       NUMBER" ................................................................................................ 2

II.    MASSARELLO FILES A LAWSUIT IN THE MIDDLE DISTRICT
       OF ALABAMA FOR A VIOLATION OF THE TCPA ............................... 3

LEGAL STANDARD.......................................................................................... 5

ARGUMENT ...................................................................................................... 6

I.     MASSARELLO DOES NOT PLEAD HE IS THE "CALLED
       PARTY" WITHIN THE MEANING OF THE TCPA.................................. 6

       A.     The FCC's Interpretation Of The Term Called Party Is Entitled
              To No Deference ............................................................................... 6

       B.     The Plain Meaning Of The Phrase Called Party Supports
              PHRG's Interpretation....................................................................... 8

       C.     Massarello's Claim Fails Because Another Called Party Gave
              Prior Express Consent ...................................................................... 10

       D.     Congress Knew How To Craft Laws Governing Current
              Subscribers And Did Not Do So ....................................................... 12

       E.     This Court Should Not Interpret The TCPA To Reach An
              Absurd Result Of Strict Liability For "Wrong Number" Cases ........ 14

II.    MASSARELLO'S CLAIM FOR TREBLE DAMAGES SHOULD BE
       WITHDRAWN PURSUANT TO THE PARTIES' AGREEMENT........... 15

CONCLUSION ................................................................................................. 19

ii

# <u>TABLE OF AUTHORITIES</u>

CASES

*ACA Int'l v. Fed. Commc'n Comm'n*, 885 F.3d 687 (D.C. Cir. 2018)..... 6-7, 12, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 5, 16

*Ashland Hosp. Corp. v. Services Employees Intern. Union, Dist. 1199
    WV/KY/OH*, 708 F.3d 737 (6th Cir. 2013) ......................................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 5, 16

*Bristow v. Am. Nat. Ins. Co.*, No. 20-CV-10752, 2021 WL 2201171
    (E.D. Mich. June 1, 2021) ............................................................................. 16, 18

*Carlton v. Mercantile Adjustment Bureau, LLC*, No. 15-CV-07124,
    2016 WL 11518617 (C.D. Cal. Mar. 23, 2016) ................................................... 9

*Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837
    (1984) ................................................................................................................. 7, 12

*Currier v. PDL Recovery Group, LLC*, No. 14-CV-12179, 2017 WL
    712887 (E.D. Mich. June 1, 2021) ...................................................................... 18

*Doe v. Baum*, 903 F. 3d 575 (6th Cir. 2018) ............................................................. 5

*Duchene v. Onstar LLC*, No. 15-CV-13337, 2016 WL 3997031 (E.D.
    Mich. July 26, 2016) ...................................................................................... 16-18

*Hamza v. Dunhams Athleisure Corp.*, No. 16-CV-11641, 2017 WL
    1077895 (E.D. Mich. Mar. 22, 2017) ............................................................ 17-18

*Harrington v. Vandalia-Butler Bd. Of Ed.*, 649 F.2d 434 (6th Cir.
    1981) ...................................................................................................................... 3

*Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888
    (E.D. Mich. 2012) ......................................................................................... 5, 17-18

*Jama v. Immigration and Customs Enforcement*, 543 U.S. 335 (2005) ................. 13

*Johnson v. Detroit Enterprise Academy*, No. 17-CV-10215, 2017 WL
    3910920, at *1 (E.D. Mich. Sept. 7, 2017) .......................................................... 7

*King v. Zamiara*, 788 F.3d 207 (6th Cir. 2015) ........................................ 8

*Leyse v. Bank of Am. Nat.'l Ass'n*, 804 F. 3d 316 (3d Cir. 2015) ........................... 10

*Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (2024) ............................. 7

*N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020) ......................................................... 12

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) ..................... 12

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1 (2019) ..................................................... 7

*Pulsifer v. United States*, 601 U.S. 124 (2024) ......................................... 13

*Reese v. CNH Am. LLC*, No. 04-CV-70592, 2005 WL 8161271 (E.D. Mich. 4, 2005) .................................................. 16

*Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012) ......................... 12

*United States v. Fitzgerald*, 906 F.3d 437 (6th Cir. 2018) ...................................... 14

*United States v. Henry*, 983 F.3d 214 (6th Cir. 2020) .............................................. 8

*Whiteman v. Am. Trucking Assocs.*, 531 U.S. 457 (2001) ...................................... 10

**STATUTES**

47 U.S.C. § 227(a) ............................................................................. 6, 8

47 U.S.C. § 227(b) ....................................................................... *Passim*

47 U.S.C. § 227(c) ............................................................................. 13

**RULES**

Fed. R. Civ. P. 12(b) ........................................................................... 5

Fed. R. Civ. P. 12(f) ...................................................................... 15, 19

**FEDERAL COMMUNICATIONS COMMISSION ORDERS**

*In the Matter of Rules & Regulations Implementing the Telephone
     Consumer Protection Act of 1991*, 30 F.C.C.R. 7961 (2015)  ........................  8-9

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.      Should the Court dismiss Plaintiff's Amended Complaint because he is not

the "called party" as a matter of law?

       Defendant Power Home Remodeling Group, LLC answers "Yes."

       Plaintiff Nathan Massarello answers "No."

II.     Should the Court allow Plaintiff to withdraw his claim for treble damages

based on the agreement of the parties?

       The Parties answer "Yes."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

47 U.S.C. § 227(b)(1)(A)

*Leyse v. Bank of Am. Nat.'l Ass'n*, 804 F. 3d 316 (3d Cir. 2015)

*Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (2024)

*Bristow v. Am. Nat. Ins. Co.*, No. 20-CV-10752, 2021 WL 2201171 (E.D. Mich. June 1, 2021)

Defendant Power Home Remodeling Group, LLC ("PHRG" or "Defendant"), by and through its attorneys, Duane Morris, LLP, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Nathan James Massarello's ("Massarello" or "Plaintiff") First Amended Class Action Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

This case involves an accidental call to a wrong number.  Rather than chalking up the call to the mistake it was, Massarello filed a federal lawsuit alleging a violation of the Telephone Consumer Protection Act ("TCPA") and seeking more than $1,500 in statutory penalties.  Now that the threshold issue of personal jurisdiction is resolved, this Court can address Plaintiff's claims, where Massarello fairs no better.

*First*, Massarello's Amended Complaint fails because he has not and cannot plead that he is the "called party" as required to state a claim for alleged violation of the TCPA.  In fact, Plaintiff concedes in this Amended Complaint that he is not the "called party."  As a result, Plaintiff's claim fails as a matter of law, and his conclusory allegations regarding his lack of prior express consent are irrelevant. Thus, the Court should dismiss the Amended Complaint.

*Second*, during the conferral process for this motion, the parties agreed that Massarello would withdraw his claim for statutory treble damages.  Under the

TCPA, statutory treble damages are available only where a defendant has "actual knowledge" that he called the wrong number, and PHRG undisputedly lacked any such knowledge. The parties are currently negotiating a joint motion to withdraw Plaintiff's claim for treble damages and expect it to be filed shortly. Therefore, PHRG submits such a request but expects that it will be moot shortly.

Accordingly, this Court should dismiss the Amended Complaint in its entirety, but regardless it should reject Massarello's claim for statutory treble damages pursuant to the parties' forthcoming motion.

## **BACKGROUND**

## I. **POWER HOME REMODELING GROUP CALLS THE "WRONG NUMBER"**

The allegations in the Amended Complaint do not materially differ from the original Complaint. For the Court's benefit, PHRG summarizes them here.

PHRG is a company that "offers home renovation services." (ECF No. 5, PageID.6 ¶ 12.) Massarello alleges that, in June 2024, PHRG "placed at least five calls" to his cellular telephone number. (*Id.*, PageID.7 ¶ 17.) Massarello claims he "did not provide [PHRG] with consent to place [these] calls." (*Id.*, PageID.8 ¶ 26.) According to Massarello, PHRG left him voicemails that stated:

> Hi, this is Power Home Remodeling calling to confirm your appointment. Please call us back to confirm and we'll have one of your remodeling experts come out to discuss your home remodeling project. You can reach us at 888 remodel. Again, please call us back to confirm

your appointment for your free home estimate with Power Home Remodeling.  That number is 888-736-6335.

(*Id.*, PageID.7 ¶¶ 19-20.)  Massarello does not allege he answered PHRG's calls but rather that he "listened to the voice messages Defendant delivered to his cellular telephone."  (*Id.*, PageID.8 ¶ 30.)

Further, Massarello affirmatively concedes that the calls were not intended for him.  (*Id.*, PageID.6 ¶ 16.)  He states that PHRG "placed calls to [the] telephone number . . . intending to reach someone other than Plaintiff."  (*Id.*)  Put another way, as Plaintiff alleges, this is a case involving the "dialing [of] wrong or reassigned cellular telephone numbers."  (*Id.*, PageID.10 ¶ 52.)

## II.    MASSARELLO FILES A LAWSUIT IN THE MIDDLE DISTRICT OF ALABAMA FOR A VIOLATION OF THE TCPA

Based on these allegations, Massarello filed a federal lawsuit, in his home state of Alabama, seeking to recover under the TCPA.  (ECF No. 4, PageID.22., Prior ECF No. 20 at 6-13.)[1]  PHRG, however, is not subject to general personal jurisdiction in Alabama, and it does not conduct any business in Alabama.  PHRG moved to dismiss the Complaint arguing, among other things, that the U.S. District Court for the Middle District of Alabama lacks personal jurisdiction over PHRG for the purpose of adjudicating Massarello's claims.

---

[1]  This Court can take judicial notice of the record prior to transfer.  *Harrington v. Vandalia-Butler Bd. Of Ed.*, 649 F.2d 434, 441 (6th Cir. 1981).

As PHRG explained, on June 13, 2024, while conducting in-person door-to-door marketing in Waterford Township, Michigan, a PHRG representative spoke to a homeowner who expressed an interest in receiving a free estimate regarding remodeling to his roof.  (*Id*. at 3.)  The PHRG representative assisted the homeowner in calling PHRG's headquarters to set up an appointment for his free estimate.  (*Id*.)  On that call, the homeowner provided his name, provided the telephone number ending in 7904, and provided his consent to be called at that number.  (*Id*.)  PHRG also advised the homeowner on multiple occasions that it would use such number to confirm his appointment prior to June 20, 2024.  (*Id*.)  These are the phone calls that Massarello alleges he received.  (*Id.*)  When PHRG did not reach the homeowner by June 20, 2024, to confirm the appointment, it ceased all communications to the phone number ending in 7904.  (*Id.*)   PHRG did not receive any communications from Massarello, and Massarello did not request that PHRG cease communications, until after that date.  (*Id.*)

Upon receipt of PHRG's motion, the parties were able to "meet and confer" and agree to transfer to this judicial district (*i.e.*, where PHRG is subject to specific personal jurisdiction).  (ECF No. 2, PageID.17.)  In pertinent part, the stipulation states that "Defendant [has] submitted evidence that it was calling a Michigan telephone number and resident, not an Alabama resident, and that it does not conduct business in Alabama."  (*Id.*)

4

Now that the case has been transferred, the sufficiency of the Amended Complaint is properly before the Court for decision.   PHRG submits that these underlying allegations and facts are insufficient for Plaintiff to state a claim upon which relief can be granted.   Accordingly, it now moves this Court to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

A plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "Legal conclusions, formulaic recitations of the claim's elements, and naked assertions of liability are all insufficient."   *Doe v. Baum*, 903 F. 3d 575, 580-81 (6th Cir. 2018) (cleaned up).

In order to state a claim for violation of the TCPA, a plaintiff must allege: "(1) a call was placed to a cellular or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient."   *See, e.g, Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888, 892 (E.D. Mich. 2012).   Put more precisely, with respect to the third element, a plaintiff must plead that the call was made without "the prior express consent of the *called party*."   47 U.S.C. § 227(b)(1)(A) (emphasis added).

If a plaintiff cannot plead that the "called party" failed to provide prior express consent, then the plaintiff has not stated a *prima facie* TCPA claim.  *Id.*

## ARGUMENT

## I.   MASSARELLO IS NOT THE "CALLED PARTY" WITHIN THE MEANING OF THE TCPA

As explained above, an entity only can violate this section of the TCPA if it makes a call "other than a call made for emergency purposes or made with the prior express consent of the called party."   47 U.S.C. § 227(b)(1)(A).   To that end, Massarello alleges that he "did not provide [PHRG] with consent to place calls, in connection with which it used an artificial or prerecorded voice, to telephone number (XXX) XXX-7904."  (ECF No. 5, PageID.8 ¶ 26.)  But that allegation presupposes that Massarello is the *called party* within the meaning of the statute.  (*See id.*)  He is not (or is at least not the exclusive one) and, therefore, Massarello cannot state a claim upon which relief can be granted.

### A.   *The FCC's Interpretation Of The Term Called Party Is Entitled To No Deference*

For years, litigants have debated the question of whether "the statutory reference to the consent of the 'called party' refers to the expected recipient of a call or message, not the actual recipient."  *See, e.g., ACA Int'l v. Fed. Commc'n Comm'n*, 885 F.3d 687, 706 (D.C. Cir. 2018).  Although the term "called party" is used in the statute, the TCPA does not define the term.  47 U.S.C. § 227(a).  Since 2015, the

Federal Communications Commission (the "FCC") has interpreted the term to mean "the person actually reached" even though those words do not appear in the statute. *ACA Int'l*, 885 F.3d at 705. And courts have upheld that interpretation explaining that the FCC "could permissibly interpret 'called party' in that provision to refer to the current subscriber." *Id.* at 695, 706 (citing *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

But this Court should not accept this analysis because "*Chevron* is overruled." *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244, 2273 (2024).[2] Accordingly, courts are instructed to no longer ask whether a construction of the statute is "permissible." *Id.* at 2266. Indeed, it "makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible." *Id.* The Sixth Circuit has not addressed this question. *See, e.g., Johnson v. Detroit Enterprise* Academy, No. 17-CV-10215, 2017 WL 3910920, at *1 (E.D. Mich. Sept. 7, 2017) (implying the Sixth Circuit has not

---

[2] It is immaterial whether *Chevron* deference was the right vehicle to interpret this portion of the statute because the FCC Order "may not be binding on a district court, and a district court therefore may not be required to adhere to it." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 7 (2019). Either way, the Court is required to make a determination for itself.

examined the issue). Therefore, this Court is empowered to decide for itself whether the best reading of the TCPA is the one advanced by PHRG.

**B.    *The Plain Meaning Of The Phrase Called Party Supports PHRG's Interpretation***

*First*, the plain meaning of the words "called party" support the interpretation that the phrase refers to the person who the dialer "called" as opposed to the party who answered. 47 U.S.C. § 227(a). "When interpreting a statute" courts are instructed to "begin with the plain meaning of the statutory language." *United States v. Henry*, 983 F.3d 214, 218 (6th Cir. 2020) (quoting *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015)). To that end, the Court can consider the statements of FCC Commissioner Ajit Pai with regard to the FCC's flawed interpretation. *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 8078-79 (2015) (Pai, dissenting). There, Commissioner Ajit Pai explained:

> Start with an example of ordinary usage. Your uncle writes down his telephone number for you and asks you to give him a call (what the TCPA terms "prior express consent"). If you dial that number, whom would you say you are calling? Your uncle, of course.
>
> No one would say that the answer depends on who actually answers the phone. If your uncle's friend picks up, you'd say you were calling your uncle. So too if the phone is picked up by the passenger in your uncle's vehicle or your uncle's houseguest. Nor would your answer change if your uncle wrote down the wrong number, or he lost his phone and someone else answered it. Who is the called party in each and every one of these situations? It's obviously the person you expected to call (your uncle), not the person who actually answers the phone.

> And no one would say that the answer depends on who actually pays
> for the service.  If your uncle and aunt share a landline, you'd still say
> you were calling your uncle even if your aunt's name was on the bill.
> And if your uncle and aunt are on a wireless family plan, it's still his
> number you're dialing even if she's picking up the tab.  In other words,
> it doesn't matter who the actual subscriber is; what matters when
> placing a call is whom you expect to answer.

*Id.*; *Carlton v. Mercantile Adjustment Bureau, LLC*, No. 15-CV-07124, 2016 WL
11518617, at *2 (C.D. Cal. Mar. 23, 2016) (noting Commissioner Pai's dissent for
proposition that the 2015 FCC Order "was far from unanimous" and was challenged
at least eleven times).  The plain meaning of the phrase *called party* does not hinge
on the person who answers the phone.

Moreover, Commissioner Pai's call to plain meaning is consistent with the
use of the term *called party* within the statute.  Indeed, the phrase *called party*
appears within the statute's broader commandment that calls made "with the prior
express consent of the called party" are non-compensable.  47 U.S.C.
§ 227(b)(1)(A).  If the phrase *called party* secretly meant solely the "actual
recipient," then there would be no way to obtain prior express consent in a "wrong
number" fact pattern.  By the time the "actual recipient" (with whom the caller has
never spoken) picked up the phone, the statute would be violated.  It would be a *de
facto* strict liability regime for "wrong number" dialers — whereas prior express
consent would vitiate all other calls.  Congress did not intend to hide such sweeping
liability in "vague terms or ancillary provisions — it does not, one might say, hide

elephants in mouseholes." *Whiteman v. Am. Trucking Assocs.*, 531 U.S. 457, 468 (2001). Consequently, the plain meaning of the phrase *called party* means what it says, and it refers to the party that the dialer called as opposed to who answered.

### C. *Massarello's Claim Fails Because The Called Party Gave Prior Express Consent*

*Second*, Massarello's theory runs contrary to the Third Circuit Court of Appeals' rationale for denying statutory standing in such cases. Consequently, Massarello's allegation that PHRG "intend[ed] to reach someone other than Plaintiff" should be dispositive here. (ECF No. 5, PageID.6 ¶ 16.) Indeed, the Third Circuit Court of Appeals predicated its rationale granting "actual recipients" statutory standing on the assumption the *called party* defense can still be a bar to liability. *Leyse v. Bank of Am. Nat.'l Ass'n*, 804 F. 3d 316, 327 (3d Cir. 2015). Although Court noted some of the author reaching an alternative conclusion, the Third Circuit explains:

> [T]he caller may invoke the consent of the 'called party' as a defense if the plaintiff is someone other than the 'called party.' Thus, if [a third party] were the 'called party' by virtue of being the intended recipient of the call, her consent to receive robocalls would shield [defendant] from any suit brought by [plaintiff]. We need not deny statutory standing to [plaintiff] to protect [defendant] from unanticipated liability.

*Id.* at 325 n.13 & 27.

Although the Sixth Circuit has not squarely addressed this question, this Court should likewise recognize this defense based on the Sixth Circuit's interpretation of

the TCPA.  *Ashland Hosp. Corp. v. Services Employees Intern. Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 741-42 (6th Cir. 2013).  In *Ashland Hospital Corp.*, the Sixth Circuit interpreted a different provision of the TCPA — namely the phrase to "make any call" under the statute.  *Id.*  There, the Sixth Circuit held that because the meaning of the phrase was "plain," courts need only apply its plain meaning and the "analysis comes to an end."  *Id.* at 741.  The Court observed that "[w]hile the TCPA does not define 'call,' that operative term quite naturally suggests some kind of direct communication between two parties —the caller and the caller's intended recipient. A person is said to 'call' whoever is on the other end of the line."  *Id.*  If the TCPA presumed that the person on the other end of the line would be the "intended recipient," then the analysis should stop here.

Although interpreting a different part of the statute, it is not plausible to claim that the Sixth Circuit would meaningfully differ in its treatment of the term "call" and its treatment of the phrase "called party."  If the statute contemplates that calls occurred between "the caller and the caller's intended recipient," *Id.*, then Massarello's claim fails because he was not the intended recipient by his own admission.  (ECF No. 5, PageID.6 ¶ 16.)  Under this interpretation (*i.e.*, the one endorsed by the Third Circuit), Massarello's claim would still fail because PHRG received prior express consent to call the phone number ending in 7904 and it just

11

happened to be the "wrong number."  (ECF No. 4, PageID.22., Prior ECF No. 20 at 6-13.)

**D.     *Congress Knew How To Craft Laws Governing Current Subscribers And Did Not Do So***

*Third,* it is impermissible to equate the term "called party" with the term "current subscriber" as Massarello must advance here.  *ACA Int'l*, 885 F.3d at 706. In analyzing the FCC's interpretation, the *ACA Int'l* court determined that the FCC "could permissibly interpret 'called party' in that provision to refer to the current subscriber."  *Id.*  Other courts have also based their conclusions on the idea that this phrase must refer to the "current subscriber."  *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 639-40 (7th Cir. 2012); *N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).  Each of those decisions have based their ruling on the structure of the statute reasoning that:

> Section 227 uses the phrase "called party" seven times all told. Four unmistakably denote the current subscriber (the person who pays the bills or needs the line in order to receive other calls); one denotes whoever answers the call (usually the subscriber); and the others (the two that deal with consent) have a referent that cannot be pinned down by context.

*Soppet*, 679 F.3d at 640.  These courts incorrectly conclude that because the phrase "called party" *happens* to be used in connection with the "current subscriber" at least

12

4 out of 7 times, those terms *must* be synonymous. *See id.* But, that interpretation is inconsistent with the statutory text of the TCPA.

Indeed, it is well-settled that where "Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest," then courts should be reluctant to adopt contradicting interpretations. *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 341-42 (2005). Here, where Congress intended for a provision of the TCPA to apply only to "subscribers," it said so. There is an entire subsection of the statute titled "Protection of Subscriber Privacy Rights" where the statute purports to set forth requirements for rulemaking "concerning the need to protect residential telephone *subscribers'* privacy rights." *See, e.g.,* 47 U.S.C. § 227(c)(1) (emphasis added). Further, Congress used the term *subscriber* at least 17 distinct times throughout the statute — each time referring to the party that pays for the service. *See id.* Therefore, although Congress knew how to limit the TCPA to subscribers, Massarello must advance a theory where the term "called party" and "current subscriber" are synonymous.

The Supreme Court has explained that "[i]n a given statute, [a] term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Absent an alternative meaning, there would be no good reason Congress would have consistently used the term subscriber 17 times throughout the statue, only to deviate and use the term *called party* here. It

would make even less sense for Congress to require subscribers to be the ones to provide prior express consent, in a "wrong number" case, because the subscriber will likely have never spoken to the dialer. *See supra* Section I.C. Consequently, the "current subscriber" interpretation is certainly not the "best" reading of the TCPA.

### E.  *This Court Should Not Interpret The TCPA To Reach An Absurd Result Of Strict Liability For "Wrong Number" Cases*

*Fourth*, the "current subscriber" interpretation would lead to absurd results and "courts should not construe a statute to produce an absurd result that we are confident Congress did not intend." *United States v. Fitzgerald*, 906 F.3d 437, 447 (6th Cir. 2018). Here, such result would be absurd because the statute would arbitrarily impose strict liability for those who happen to draw the misfortune of being provided a "wrong number."

To illustrate the absurdity of the "current subscriber" interpretation, assume *arguendo* that two callers obtained prior express consent each from someone who purports to be the subscriber. Now imagine that both callers make calls in reliance on those statements. If the first caller happens to reach the purported subscriber, then no liability would attach. However, if the second caller happens to reach someone other than the purported subscriber, they are liable to the tune of $500 per call. *See* 47 U.S.C. § 227(b)(3)(B). There is no rational reason why Congress would want to exclude liability in the former scenario and for it to attach in the latter —

14

especially where such liability would turn entirely on the veracity of representations outside of the control of the would-be caller.

Accordingly, the "current subscriber" approach is not the best reading of the TCPA.  The best reading is that, as long as the party that the dialer called provided consent, then no TCPA liability attaches.  This Court should dismiss Massarello's claim with prejudice because he fails to state a claim upon which relief can be granted.

## II.    MASSARELLO'S CLAIM FOR TREBLE DAMAGES SHOULD BE WITHDRAWN PURSUANT TO THE PARTIES' AGREEMENT

As explained above, during the conferral process for this motion, the parties agreed that Massarello would withdraw his claim for statutory treble damages. Under the TCPA, statutory treble damages are available only where a defendant has "actual knowledge" that he called the wrong number.  And, PHRG did not have such knowledge.  The parties are currently negotiating a joint motion to that effect and expect it to be filed shortly.  Therefore, PHRG submits its arguments here but expects that they will be moot shortly.

Under Fed. R. Civ. P. 12(f), a district court may strike a claim for damages where it is "redundant, immaterial, impertinent, or [contains] scandalous matter."  A claim for damages is immaterial or impertinent where a particular type of damages

is "not available" as a matter of law based on the allegations in the complaint.[3]  *See,*

*e.g., Reese v. CNH Am. LLC*, No. 04-CV-70592, 2005 WL 8161271, at *2 (E.D.

Mich. 4, 2005).  And here, Massarello has not alleged sufficient facts to demonstrate

that statutory treble damages are available to him.

The TCPA authorizes an award of statutory treble damages only "[i]f the court

finds that the defendant willfully or knowingly violated this subsection."  47 U.S.C.

§ 227(b)(3).  It is a plaintiff's burden to plead sufficient facts to support a finding of

"actual knowledge" or the claim must be dismissed.  *See, e.g., Bristow v. Am. Nat.*

*Ins. Co.*, No. 20-CV-10752, 2021 WL 2201171, at *2 (E.D. Mich. June 1, 2021).  It

is well-established that "something more than a mere violation is required in order

to elevate it to a willful or knowing one."  *Id.* (emphasis removed).  "This District

has repeatedly determined that the 'something more' is actual knowledge, not mere

constructive knowledge, and not a mere violation of the statute."  *Id.* (emphasis

removed).

The reasoning of *Bristow* is sound and is reflected in numerous decisions of

this Court.  *Duchene v. Onstar LLC*, No. 15-CV-13337, 2016 WL 3997031, at *7

---

[3]  PHRG is also unopposed to the Court dismissing Massarello's claim for treble
damages, with prejudice, under Fed. R. Civ. P. 12(b)(6), and the legal standard
described above, because he does not plead "sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678
(quoting *Twombly*, 550 U.S. at 570).

(E.D. Mich. July 26, 2016); *Hamza v. Dunhams Athleisure Corp.*, No. 16-CV-11641, 2017 WL 1077895, at *5 (E.D. Mich. Mar. 22, 2017) (same); *Harris*, 867 F. Supp. 2d at 895 (same). Because Massarello does not (and cannot) plead that PHRG had actual knowledge it was calling the wrong number, he cannot maintain his claim for statutory treble damages under the TCPA

For example, in *Duchene*, the court considered a similar set of facts to what was alleged here. *See, e.g., Duchene*, 2016 WL 3997031, at *1. There, a TCPA plaintiff received calls and voicemails from a corporate defendant's telephone number. *Id.* The plaintiff alleged that he was not a customer of the defendant and never provided defendant with his telephone number. *Id.* In essence, the plaintiff pled that the defendant had the "wrong number." *Id.* at *6-7. The plaintiff did not allege, however, "that he notified defendant that defendant was calling the wrong number . . . [and] that after that notice, defendant continued to place unauthorized calls to plaintiff." *Id.* at *6 (cleaned up). Based on this fact pattern, the court dismissed the claim. *Id.* at *9. It held:

> that a willful or knowing violation of the TCPA requires that plaintiff has to plead that defendant was made aware of/notified that plaintiff did not consent to calls from defendant. As plaintiff does not plead that he notified defendant that he did not consent to the calls (or that defendant was otherwise aware that the plaintiff did not consent to the calls), the Court grants defendant's Renewed Motion to Dismiss.

*Id.* at *7 (cleaned up). "Actual knowledge" means that PHRG actually knew it was calling the wrong number and continued to do so anyway.

To assure itself, the Court can compare the results in *Bristow*, *Duchene*, *Hamza*, and *Harris*, with the other decision in this district that reached the opposite result. *Currier v. PDL Recovery Group, LLC*, No. 14-CV-12179, 2017 WL 712887, at *10 (E.D. Mich. June 1, 2021). In *Currier*, the court awarded treble damages to a TCPA plaintiff, where plaintiff twice told representatives of the defendant that he "no longer wished to receive phone calls from" the defendant — and the phone calls continued. *Id.* "As such, the court conclud[ed] that plaintiff has established that defendants willfully violated the TCPA by continuing to place automated calls to plaintiff's cellular phone *after* plaintiff had asked that such communications cease." *Id.* at *10 (cleaned up and emphasis in original). The lynchpin to treble damages is, therefore, whether the TCPA defendant knew it was calling the wrong number and did so anyway.

Here, Massarello cannot plead facts to support that lynchpin. Massarello admits that he seeks "treble damages under 47 U.S.C. § 227(b)(3)." (ECF No. 5 at PageID 12.) But Massarello does not (and cannot) plead any facts to support that contention. Massarello admits that this case involves PHRG's alleged practices regarding "wrong or reassigned cellular telephone numbers," but does not include any facts that would establish that Defendant knew it was dialing the wrong number. (*Id*., PageID.10, ¶ 52.) But, Massarello does not allege that he told PHRG that it was dialing the wrong number — nor does he plead that PHRG was otherwise aware

it was dialing the wrong number and did so anyway.  (*See id*.)  To the contrary, Massarello affirmatively alleges that PHRG had the specific intent to reach someone other than himself.  (*See id.*, PageID.10, ¶ 16 (alleging PHRG "placed calls . . . intending to reach someone other than Plaintiff").)  Consequently, in the absence of allegations establishing that PHRG knew it was calling the wrong number and pursuant to the parties' agreement, the Court should allow Massarello to withdraw his claim for statutory treble damages.

## CONCLUSION

For these reasons, Defendant Power Home Remodeling Group, LLC respectfully requests that this Court dismiss Plaintiff Nathan Massarello's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative strike his claim for treble damages pursuant to Federal Rule of Civil Procedure 12(f), as well as grant it other relief that the Court deems just and proper.

**Dated:  October 9, 2024**                              Respectfully Submitted,

POWER HOME REMODELING
GROUP, LLC

By:  */s/ Gerald L. Maatman, Jr.*
      One of its Attorneys

Gerald L. Maatman, Jr. (IL Bar No. 6181016)
Jennifer A. Riley (IL Bar No. 6272366)
Ryan T. Garippo (IL Bar No. 6342203)
DUANE MORRIS LLP

19

190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone:  (312) 499-6700
Facsimile:  (312) 499-6701
Email:  gmaatman@duanemorris.com
Email:  jariley@duanemorris.com
Email:  rgarippo@duanemorris.com

Joseph A. Ciucci (P48624)
DUANE MORRIS LLP
1075 Peachtree Street, Suite 1700
Atlanta, Georgia 30309
Telephone:  (404) 253-6988
Facsimile:  (404) 393-0744
Email:  ciucci@duanemorris.com

***Attorneys for Defendant***

20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN JAMES MASSARELLO,

      Plaintiff,

v.

POWER HOME REMODELING
GROUP, LLC,

      Defendant.

Case No. 24-CV-12480

Honorable Robert J. White

## BRIEF FORMAT CERTIFICATION FORM

    I, Gerald L. Maatman, Jr. certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are filed in searchable PDF format, *see* Case Management Requirements § III.A;

☒ except for footnotes and necessary block quotes, the brief is double spaced (not "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety (not in minuscript), *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, *see* Case Management Requirements § III.B.

I also acknowledge that my brief will be stricken from the docket if the Court later finds that these requirements are not met.


*/s/ Gerald L. Maatman, Jr.*
Gerald L. Maatman, Jr.
Attorney for Defendant Power Home Remodeling Group, LLC

## <u>CERTIFICATE OF SERVICE</u>

I, Gerald L. Maatman, Jr., do hereby certify that a true and correct copy of the

forgoing document has been furnished by the Court's CM/ECF filing system on this

9th day of October 2024 to the following individuals:

Anthony I. Parnonich                    Michael L. Greenwald
Parnonich Law, P.C.                     Greenwald Davidson Radbil, PLLC
350 Lincoln Street, Suite 2400          5550 Glades Road, Suite 500
Hingham, MA 02043                       Boca Raton, FL 33431
Telephone: (617) 485-0018               Telephone: (561) 826-5477
Email: anthony@paronichlaw.com          Email: mgreenwald@gdrlawfirm.com

James Matthew Stephens
Methvin, Terrell, Yancey, Stephens & Miller, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: (205) 939-0199
Email: mstephens@mtattorneys.com

**Dated: October 9, 2024**                /s/ *Gerald L. Maatman, Jr.*
                                        Gerald L. Maatman, Jr.
                                        DUANE MORRIS LLP
                                        190 S. LaSalle Street, Suite 3700
                                        Chicago, Illinois 60603
                                        Telephone: (312) 499-6700
                                        Email: gmaatman@duanemorris.com

                                        ***Counsel for Defendant***