UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NATHAN JAMES MASSARELLO,<br><br>　　　Plaintiff,<br><br>v.<br><br>POWER HOME REMODELING GROUP, LLC,<br><br>　　　Defendant. | Case No. 24-cv-12480<br><br>Honorable Robert J. White |

**ORDER DENYING MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

This class-action case involves Plaintiff Nathan James Massarello's claim against Defendant Power Home Remodeling, LLC for a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. According to Plaintiff, Defendant violated the TCPA "by using an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the class, without [Plaintiff's or other class members'] consent." (ECF No. 5, PageID.6-8, 11-12). Before the Court is Defendant's motion to dismiss Plaintiff's amended complaint under Fed. R. Civ. P. 12(b)(6) (failure to state a claim). (ECF No. 9). The Parties fully briefed the motion, and the Court will decide it without oral argument pursuant to Local Rule

7.1(f)(2). This matter essentially turns on the parties' disputed interpretation of language in the TCPA. For the following reasons, the Court rejects Defendant's proposed interpretation of the relevant language and denies its motion.

I.   **Background**

Plaintiff is an Alabama resident, and he has had the same cellular telephone number for the last ten years. (ECF No. 5, PageID.6). Defendant is a limited liability company that offers renovation services. (ECF No. 5, PageID.6). Plaintiff alleges that in June 2024, Defendant, using an artificial or prerecorded voice, placed at least five calls to Plaintiff without his consent. (ECF No. 5, PageID.6-8). As particularly relevant here, Plaintiff alleges that Defendant placed these calls "intending to reach someone other than Plaintiff." (ECF No. 5, PageID.6). According to Defendant, it had consent from the calls' intended recipient, but "just happened to call the 'wrong number.'" (ECF No. 9, PageID.37-38, 46-47).

Defendant now moves to dismiss, arguing that Plaintiff in this case is not "the called party" as defined by the TCPA and has no claim here because Defendant had consent from the calls' intended recipient and only mistakenly reached Plaintiff. (ECF No. 9, PageID.38, 41-50).

II.   **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

### III. Analysis

#### A. Meaning of "Called Party"

The Court begins with the applicable statutory language. The relevant portion of the TCPA here states:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using any automatic telephone dialing system [ATDS] or an artificial or prerecorded voice—

3

\* \* \*

>  (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service *for which the called party is charged for the call* . . . .

47 U.S.C. § 227(b)(1) (emphasis added).

The key issue here is whether "the called party," which is not defined by statute, means—particularly in the context of wrong-number cases like this one—the intended or the actual recipient of a call. If, as Defendant asserts, the meaning applies only to a call's intended recipient, then Plaintiff cannot state a claim where he acknowledges that Defendant was trying to reach someone else. In that case, the called party would be the individual Defendant purportedly had consent to call, and there would be no liability to Plaintiff under 47 U.S.C. § 227(b)(1)(iii).[1] But if the language applies to an actual recipient, then Defendant would be liable under the facts as pled for making prerecorded calls to Plaintiff's phone without his consent. Stated differently, the Court must decide whether the TCPA provides for strict liability when a Defendant mistakenly calls a wrong number without consent.

---

[1] The Court acknowledges Plaintiff's argument that prior express consent is an affirmative defense, a lack thereof need not be affirmatively pled, and such a hypothetical defense is irrelevant at this stage. But the complaint itself acknowledges that Plaintiff was not Defendant's intended recipient of the calls. Plaintiff therefore would not be the called party—as necessary to state a claim under Defendant's interpretation of the language—regardless of consent from the person Defendant purportedly meant to call.

4

As an initial matter, Defendant is correct that the Court should no longer defer to the FCC's interpretation of the relevant language.[2] Specifically, following *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 144 (2024), the Court must engage in independent statutory review. No longer are agency decisions to be afforded deference; instead, when a statute is ambiguous, "courts use every tool at their disposal to determine the best reading of the statute." *Id*. at 400. Courts are to follow the traditional process of statutory interpretation, giving respect to the views of the Executive Branch, but not "delegating ultimate interpretive authority to agencies[.]" *Id*. at 403. As always, the Court begins with the statute's plain language. *See Lopez v. Garland*, 116 F.4th 1032, 1043 (9th Cir. 2024) ("Against this background, and pursuant to *Loper* . . . , we proceed to construe the statute independently. We begin, as always, with the plain language of the statute. If the plain language is clear, our inquiry is complete.") (citations omitted); *See United States v. Bricker*, 135 F.4th 427, 443 (6th Cir. 2025) (following *Loper*, "the determinative question is whether [the Sentencing Commission's policy statement] comports with the plain language of [the statute]").

---

[2] The FCC defines "the called party" as "the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 8000-01 (2015)).

The Court has followed this guide here by interpreting the plain language of 47 U.S.C. § 227(b)(1)(iii). The Court disagrees with the Defendant's proposed interpretation; therefore, Plaintiff has stated a plausible claim for relief. And the Court's holding is consistent with those of the Seventh, Ninth, and Eleventh Circuits, which have taken on this issue already, which are all supported by public policy and practical considerations.

First, it is highly relevant that the statute at no point uses the term "intended recipient" or any terminology indicating the intent of the caller is relevant. This fact was persuasive to the Ninth Circuit in *N.L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1168 (9th Cir. 2020). It is persuasive to the Court as well. Next, where § 227(b)(1) allows liability for any nonconsensual robocall "if the recipient is within the United States," and since a call must be made to impose such liability, the statutory language supports that the called party is the person who actually received the call. *See N.L.*, 960 F.3d at 1168. Indeed, the term called party would not be written in the past tense unless intended to refer to a person to whom a call has been made. *See id.*

The statute also notes an exemption for those who are called with prior express consent. 47 U.S.C. § 227 (b)(1)(A). The Court here, like the Ninth Circuit in *N.L.*, does not think it would make sense to apply the term called party to a third person who could not qualify for this exemption. *N.L.*, 960 F.3d at 1168 ("it would be odd if 'called party' referred to some third person external to the potentially actionable

communication, *i.e.*, someone whom the caller had not in fact called, but who had previously given consent to be called").

Further, the statute notes that it applies to "any service for which the called party is charged for the call." § 227 (b)(1)(A)(iii). This suggests that the called party cannot be some intended but unknown individual who never received "the call" in a given case. *See N.L.*, 960 F.3d at 1168 ("A 'called party' that is 'charged for the call' cannot be the 'intended' but never-called person who had previously given consent."); *see also id.* at 1168-69.

The Seventh Circuit applied similar reasoning in *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012), to conclude that the called party "means the person subscribing to the called number at the time the call is made." *Id.* at 639-43. And in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014), the Eleventh Circuit adopted *Soppet*'s reasoning and rejected the defendant's argument that called party meant a call's intended recipient. *Id.* at 1251-52.

To the extent Defendant argues that Plaintiff's interpretation, and the resultant imposition of strict liability for mistakenly calling wrong numbers, would be absurd, the Court disagrees. Critically, the Seventh Circuit already rejected this very same argument (as applied to reassigned numbers) in *Soppet*, 679 F.3d at 641-43. And Congress has amended the statute numerous times over its history, most recently in 2019, but at no time has it added language to support the relevance of the caller's

7

intent (other than allowing treble damages for knowing or willful violations) or any exemption to liability when mistakenly calling a wrong (or reassigned) number.

The Court ultimately concludes that Congress intended, as consistent with the statute's text and purpose, to impose strict liability for nonconsented-to robocalls, even when innocently made to a wrong or reassigned number. *See Dickson v. Direct Energy, LP*, 69 F.4th 338, 341 (6th Cir. 2023) ("The TCPA is the product of public outrage over abusive telephone marketing practices," and "Congress thus enacted the TCPA with individual privacy interests among its primary concerns."); *N.L.*, 960 F.3d at 1169-71 ("In its findings supporting the TCPA, Congress aimed to strike a balance between individuals' privacy rights, public safety interests, and commercial freedoms of speech in a way that protects the privacy of individuals and permits legitimate telemarketing practices. . . . In all events, whether [the defendant]'s 'intended recipient' rule reflects the better balancing of competing interests is not for us to decide. What matters here is the balance that the text of the TCPA most naturally reflects. And given the 'called party' language that Congress used in the TCPA, we hold that the district court's instruction complied with the statute.") (cleaned up); *Soppet*, 679 F.3d at 641-43 (Courts may make "modest adjustments to texts that do not parse," but "[w]hen a text can be applied as written, a court ought not revise it by declaring the legislative decision 'absurd.'" Here, the defendant's interpretation "would expose new subscribers to unwanted calls and unjustified

expense. Congress might have thought the current approach [Plaintiff's interpretation, here] preferable, as a safeguard of persons assigned to recycled numbers, even though this protection comes at a cost to bill collectors.").

Further, Plaintiff's interpretation would not impose, as Defendant claims, "massive liability on callers of wrong numbers." (ECF No. 13, PageID.101). Rather, 47 USCS § 227 imposes a fine of $500, or the actual monetary damages, on a caller who uses automatic dialers to reach numbers without prior express consent. §227(b)(1)(A). And as *Soppet* points out, there are many practical ways to avoid liability in wrong- or reassigned-number cases. *Soppet,* 679 F.3d 637 at 642.

Next, Defendant's reliance on *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015), is unavailing. In *Leyse*, the Third Circuit determined that "[t]he caller may invoke the consent of the 'called party' as a defense even if the plaintiff is someone other than the 'called party.'" *Id.* at 327. "Thus, if [the plaintiff's roommate] were the 'called party' by virtue of being the intended recipient of the call, her consent to receive robocalls would shield [the defendant] from any suit brought by [the plaintiff]. . . . On the other hand, if [the plaintiff] w[as] the 'called party' despite being an unintended recipient, it is undisputed that he would have statutory standing . . . ." *Id.* The Third Circuit thus contemplated a defense under the TCPA when the defendant has consent from a call's intended recipient, at least under certain circumstances.

9

But the Court, without deciding the issue, tellingly observed that "[t]here are good reasons to doubt the equation of 'intended recipient' with 'called party.'" *Id.* at 25; *see also id.* at 325 n. 13. The Court also stated, "it is clear that the [TCPA]'s zone of interests encompasses more than just the intended recipients of prerecorded telemarketing calls. *It is the actual recipient, intended or not, who suffers the nuisance and invasion of privacy*." *Id.* at 326 (emphasis added).

> This does not mean that all those within earshot of an unwanted robocall are entitled to make a federal case out of it. Congress's repeated references to privacy convince us that a mere houseguest or visitor who picks up the phone would likely fall outside the protected zone of interests. On the other hand, a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect.

*Id.*

The same reasoning has been applied persuasively in this district, as was the case in *Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888 (E.D. Mich. 2012).[3] In *Harris,* another wrong-number case, the defendant argued that the plaintiff lacked statutory standing because he was not the intended recipient of the calls and therefore not the called party. *Id*. at 893. The Court in *Harris* rejected this argument and distinguished the facts of *Leyse*, where "an incidental recipient . . . intercepted a phone call directed toward someone else," from calls made to "the

---

[3] While *Harris* cited to the prior district court opinion in *Leyse*, it dealt with essentially the same facts and argument as at issue here.

regular user of" the phone number called. *Id*. at 893-94. And though the Third Circuit had yet to make its decision in *Leyse*, this distinction from *Harris* aligns with the Third's Circuit's later reasoning that the TCPA is designed to protect a phone number's "regular user" but not "a mere houseguest or visitor who picks up the phone," *i.e.*, those who incidentally intercept a call directed to someone else's number. *See Leyse,* 804 F.3d at 326. *Leyse* is therefore distinguishable from the instant case. And in any event, the Third Circuit seriously questioned, before deferring on this key issue, the same intended recipient theory as Defendant asserts here.

Following the reasoning of these cases and the earlier textual analysis, the Court rejects Defendant's intended party interpretation and concludes that the called party means the paying subscriber actually dialed by a defendant.[4] So liability still

---

[4] To the extent the above authority supports that the called party means the paying subscriber actually dialed by a defendant *and* any non-subscriber customary user of the number (like the Plaintiff in *Leyes*, who was the subscriber's roommate) answering a particular call, the Court will not decide this issue here. Because Plaintiff here was the subscriber of the number Defendant called, the Court need not decide whether the called party encompasses other nonsubscriber users of a telephone line. The Court only rejects Defendant's intended party theory and holds that the called party means *at least* the subscriber actually dialed by a defendant under a given set of facts. That said, the slightly broader interpretation, consistent with the Third Circuit's reasoning in *Leyse*, would extend the TCPA's protections against unsolicited robocalls to actual recipients while providing a limited defense when (1) non-customary users of a phone incidentally intercept a call or (2) the subscriber gives consent but another customary user of the phone line answers a robocall (or vice versa). This makes practical sense. In the case of a family's

11

attaches in mistaken number cases like that here, where it is undisputed that Plaintiff—the actual recipient to whom Defendant in fact directed the calls at issue—never provided consent.

A few points from Defendant's motion remain to address. First, Defendant's reliance on the statute's subscriber language is unavailing. Defendant insists that the use of the term "subscriber(s)" throughout the statute, "each time referring to the party that pays for the service," precludes interpreting the called party as synonymous with the current subscriber. (ECF No. 9, PageID.48). Defendant argues that the use of different terms entails different meanings. As stated, however, the called party may very well be broader than merely a phone number's current subscriber (*see* footnote 4), such that these terms would have different meanings. In any event, to the extent Defendant specifically cites § 227(c) and the language "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," this is an entirely separate subsection of the statute with a distinct purpose from the liability provisions and restrictions of § 227(b).

Lastly, the Court rejects Defendant's reliance on *Ashland Hosp. Corp. v. SEIU*, 708 F.3d 737 (6th Cir. 2013). According to Defendant, *Ashland*'s

---

landline or cell-phone plan, there is likely only one subscriber, but multiple other regular users of the service (or even multiple telephone numbers unique to each user, for a cell-phone plan) who could consent to certain calls.

interpretation of the phrase "make any call" under § 227(b)(1)(A) mandates interpreting the called party as a call's intended recipient. (ECF No. 9, PageID.45-47). But *Ashland* is easily distinguishable from the issue here. *Ashland* dealt with calls being placed by live people, and the plaintiff argued that making a call is the same as causing someone else to make a call. *Id*. at 741. The Sixth Circuit, relying on the phrase's plain language, rejected this argument and concluded that the plaintiff failed to state a claim where the defendant placed robocalls to various third parties that resulted in the third parties calling the plaintiff in person. *Id.* at 741-42.

In doing so, *Ashland* reasoned as follows: "While the TCPA does not define 'call,' that operative term quite naturally suggests some kind of direct communication between two parties—the caller and the caller's intended recipient. A person is said to 'call' whoever is on the other end of the line." *Id.* at 742. Despite the reference to an intended recipient, the next sentence relating to whoever is on the other end of a line seemingly encompasses who in fact was called under a given set of facts—*i.e.*, the actual recipient—Plaintiff in this case. Given the conflict inherent in *Ashland*'s reasoning, at least as it would be applied to different statutory language and facts than were at issue in *Ashland*, the case's isolated reference to an intended recipient does not change the Court's analysis here.

The Court has looked to the plain meaning of the phrase at issue, previous decisions addressing the same issue, the policy underlying the TCPA, and the

13

practicalities at issue; all run contrary to Defendant's proposed interpretation. For the reasons discussed, the Court interprets the called party under § 227(b)(1)(A) at least to mean the actual recipient of a call who was the paying subscriber actually dialed by a defendant. Here, Plaintiff had been the subscriber of the number dialed for over ten years. And he has sufficiently stated a claim against Defendant under the TCPA for making prerecorded calls to his phone without his consent.

* * *

For the reasons given, the Court ORDERS that Defendant's motion to dismiss (ECF No. 9) is DENIED.

Dated: August 27, 2025                           s/Robert J. White
                                                 Robert J. White
                                                 United States District Judge