## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NATHAN JAMES MASSARELLO, on behalf of himself and others similarly situated,

Plaintiff,

v.

POWER HOME REMODELING GROUP, LLC,

Defendant.

Case No.: 2:24-cv-12480-RJW-CI

Honorable Robert J. White

Magistrate Judge Curtis Ivy, Jr.

## PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORY NOS. 7-13 AND REQUEST FOR PRODUCTION NOS. 7-12

1

Through his interrogatories and requests for production, Nathan Massarello ("Plaintiff") seeks to understand the scope of Power Home Remodeling Group, LLC's ("Defendant") calling practices and gather information and documents that are highly relevant to the requirements of Rule 23(a) and Rule 23(b), as well as to damages. Defendant objects to, and refuses to respond to, these requests. Because the subject discovery requests—Plaintiff's interrogatory nos. 7-13 and requests for production nos. 7-12—seek highly relevant information within Defendant's custody or control, this Court should overrule Defendant's unsubstantiated objections and compel responses and related productions, just as many courts around the country have done in connection with similar putative class actions under the Telephone Consumer Protection Act.

Pursuant to Local Rule 7.1(a)(2)(A), the parties have conferred in good faith but were unable to reach agreement. The parties notified the Court of their discovery dispute on April 1, 2026 and submitted one-page summaries of their positions on April 3, 2026. This Court held a hearing on April 9, 2026, during which it authorized Plaintiff to file the instant motion by April 17, 2026.

RESPECTFULLY SUBMITTED AND DATED this April 14, 2026.

*s/ Michael L. Greenwald*
Michael L. Greenwald
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431

Telephone:  (561) 826-5477
Email:  mgreenwald@gdrlawfirm.com

Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100
Email:  anthony@paronichlaw.com

George T. Blackmore
BLACKMORE LAW PLC
1100 Owendale Drive, Suite M
Troy, MI 48083
Telephone:  (888) 835-2993
Facsimile:  (508) 318-8100
Email:  george@blackmore.law

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

|  |  |
|---|---|
| NATHAN JAMES MASSARELLO, on behalf of himself and others similarly situated, | Case No.: 2:24-cv-12480-RJW-CI |
| Plaintiff, | Honorable Robert J. White |
| v. | Magistrate Judge Curtis Ivy, Jr. |
| POWER HOME REMODELING GROUP, LLC, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
TO COMPEL ANSWERS TO INTERROGATORY NOS. 7-13 AND
REQUEST FOR PRODUCTION NOS. 7-12**

i

## TABLE OF CONTENTS

Introduction ..................................................................................................................1

Statement of Relevant Facts .......................................................................................2

Nature and Stage of the Proceeding ...........................................................................3

Defendant's Deficient Written Discovery Responses ................................................6

Legal Standard ............................................................................................................7

Argument .....................................................................................................................8

I.    The information Plaintiff seeks through interrogatory nos. 7-13 and request for production nos. 7-12 is highly relevant to the numerosity, commonality, typicality, and predominance requirements of Rule 23, as well as to class-wide damages. ......8

    A.  In TCPA class actions, courts routinely require the production of "class data" like that sought through the subject discovery requests. ...........................8

    B.  Defendant's objections lack merit and should be overruled. .....................15

        1.  The subject discovery is not overly broad or premature. .......................16

        2.  Defendant offers zero evidence that responding to the subject discovery would be unduly burdensome. .......................................................................18

        3.  Defendant's contention that whether it utilizes a prerecorded voice is a legal conclusion shielding it from its discovery obligations is unserious. ....21

II.   Defendant cannot be permitted to refuse to provide class-related discovery while simultaneously contesting class certification. ..............................................22

Conclusion .................................................................................................................23

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Tafoya v. BMG Loansatwork, Inc.*, No. 4:25-cv-2949, 2026 WL 971629 (S.D. Tex. Apr. 8, 2026).

*Fralish v. Digital Media Sols., Inc.*, No. 21-45, 2021 WL 5370104 (N.D. Ind. Nov. 17, 2021).

*Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240 (N.D. Ohio 2017).

*Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGJ, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025).

**Introduction**

This is a proposed class action under the Telephone Consumer Protection Act ("TCPA") related to unwanted calls Power Home Remodeling Group, LLC ("Defendant") placed to Nathan Massarello ("Plaintiff") and other non-customers like himself. Defendant placed these calls using an artificial or prerecorded voice without Plaintiff's or proposed class members' consent, and without having done any business with them.

Through his written discovery requests, Plaintiff seeks to understand the scope of Defendant's calling practices, but Defendant objects to, and refuses to respond to, these requests. Despite months of conferral efforts, key answers and related productions remain outstanding. The subject discovery requests—Plaintiff's interrogatory nos. 7-13 and requests for production nos. 7-12—are highly relevant to the numerosity, commonality, and typicality requirements of Rule 23(a), to the predominance requirement of Rule 23(b), and to damages, which are calculated on a per-call basis. In short, these requests seek calling records regarding the cellular telephone numbers to which Defendant placed artificial or prerecorded voice calls during the class period, how many such calls it made to those cellular telephone numbers, and those that Defendant's own records indicate were wrong numbers. Defendant cannot meaningfully contest the relevance of the sought information, so instead it claims that producing such information would be burdensome. However,

1

Defendant cannot refuse to analyze its own data on burden grounds while simultaneously refusing to produce that same data for Plaintiff to analyze. Rule 26 does not permit such a result.

Because the information Plaintiff seeks is relevant to class certification, necessary for his class damages analysis, and within Defendant's custody or control, this Court should overrule Defendant's unsubstantiated objections and compel responses and related productions, just as many courts around the country have done in connection with unyielding TCPA defendants facing similar class claims and nearly identical written discovery requests to those Plaintiff served here.

To be clear, Plaintiff seeks Defendant's own call records, which are uniquely within its possession and central to its business operations. There is no other party from which to obtain this data and, with a non-bifurcated discovery schedule, there is no other time to get it.

### Statement of Relevant Facts

The gravamen of Plaintiff's amended complaint is that Defendant placed calls to Plaintiff's cellular telephone number in connection with which it delivered artificial or prerecorded voice messages without his consent, in an attempt to reach someone other than Plaintiff and unknown to him. *See generally* ECF No. 5.

Defendant engages in door-to-door marketing in an effort to solicit potential customers who may want home remodeling and renovation bids. In June 2024,

Defendant placed multiple calls to Plaintiff's cellular telephone. *Id.*, PageID.7, ¶¶ 17-20. In connection with those calls, Defendant delivered prerecorded voice messages to confirm an appointment for a remodeling project. *Id.* However, Plaintiff had no account or relationship with Defendant, did not provide his telephone number to Defendant, did not request a remodeling bid or proposal, and did not consent to Defendant's calls. *Id.*, PageID.7-8, ¶¶ 24-26.[1]

## Nature and Stage of the Proceeding

Plaintiff alleges Defendant violated the TCPA at 47 U.S.C. § 227(b)(1)(A)(iii), which makes it "unlawful for any person . . . to make any call . . . [by] using . . . an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012).[2] Plaintiff seeks to represent the following class:

> All persons throughout the United States (1) to whom Power Home Remodeling Group, LLC placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, (3) where the call recipient did not provide their telephone number to Power Home Remodeling Group, LLC or did not have an account with Power Home Remodeling Group, LLC, (4) in connection with which Power

---

[1]     It comes as no surprise that homeowners may give fake contact information to a door-to-door solicitor in an effort to make the unwanted salesman leave. Defendant has given no indication that it makes any effort to independently verify telephone numbers provided to it.

[2]     Internal quotations and citations are omitted, and emphasis is added, unless otherwise noted.

> Home Remodeling Group, LLC used an artificial or prerecorded voice, (5) from September 26, 2020 through the date of class certification.

ECF No. 5, PageID.8, ¶ 33.

Plaintiff's proposed class is defined nearly identically to the certified class in *Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGJ, 2025 WL 1065755, at \*14 (W.D. Ky. Apr. 9, 2025) (certifying the following TCPA class: "All persons or entities throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Humana or person who consented to receive calls on behalf of an account holder (3) in connection with which Humana used an artificial or prerecorded voice, (4) four years from the filing of this action through the date of class certification.").

Of note, the Sixth Circuit recently denied the defendant's motion under Rule 23(f) for interlocutory review of the district court's certification order. *In Re: Humana, Inc.*, 163 F.4th 376, 381 (6th Cir. Dec. 30, 2025) ("First, Plaintiffs argue that a lack of consent can be easily ascertained from Humana's records indicating that the potential class member told Humana it had reached the wrong number. . . . But Humana's argument that its own record-keeping is deficient or misleading is unavailing.").

Far from outlier decisions, as Judge Easterbrook wrote for the Seventh Circuit, "[c]lass certification is normal in litigation under [the TCPA], because the main

4

questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").

And this remains true for "wrong number" TCPA class actions like this one and *Elliot*. *See, e.g.*, *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (certifying TCPA class action); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (same), *decertified per agreement of the parties*, 2020 WL 1846165 (S.D. Fla. Mar. 18, 2020); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same);[3] *accord Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021) (denying a motion to decertify a "wrong number" TCPA class); *McMillion v.*

---

[3]   Undersigned counsel was appointed as counsel for the respective classes in *Head*, *Wesley*, *Knapper*, *Reyes*, and *Johnson*. Also of note, the defendants' petitions to appeal pursuant to Rule 23(f) in *Head*, *Wesley*, and *Johnson* were denied by the Ninth, Tenth, and Seventh Circuits, respectively.

*Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying two "non-debtor" TCPA classes over objection).

**Defendant's Deficient Written Discovery Responses**

Plaintiff moves to compel substantive responses to interrogatory nos. 7-13 and request for production nos. 7-12. A true and correct copy of these requests and Defendant's responses thereto is attached as Exhibit A. Of note, Defendant has produced *no documents* in response to these requests, nor has it substantively answered any of these interrogatories. While Defendant informally notified Plaintiff that its records show more than 6,000 instances where a person in Michigan informed Defendant it was calling the wrong number, Defendant has not provided this information through an amended interrogatory response, nor has it provided the underlying telephone numbers, related call data, or associated account details. Moreover, Defendant unilaterally limited its search to Michigan, despite Plaintiff proposing a nationwide class under federal law.

In short, Plaintiff's at-issue discovery requests seek information regarding the telephone numbers to which Defendant placed calls with an artificial or prerecorded voice, the calls it placed to those telephone numbers, the persons Defendant intended to reach when placing calls, those telephone numbers to which it made calls with an artificial or prerecorded voice that are assigned to a cellular telephone service, and

those calls for which Defendant was informed it was calling the wrong person or telephone number. Ex A.

**Legal Standard**

Rule 26(b)(1) provides, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998); *accord Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242-43 (N.D. Ohio 2017) (compelling the production of data in a TCPA matter because "[t]he information that Plaintiff seeks is relevant to establishing the size and nature of the class that she wants to represent.").

Significantly, then, for the party opposing discovery, courts "have repeatedly admonished the objecting litigant that this burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor

reasonably calculated to lead to the discovery of admissible evidence." *Hobson v. Trans Union, LLC*, No. 1:13-CV-54, 2014 WL 12775013, at *4 (N.D. Ind. June 6, 2014) (collecting cases).

## Argument

I.    **The information Plaintiff seeks through interrogatory nos. 7-13 and request for production nos. 7-12 is highly relevant to the numerosity, commonality, typicality, and predominance requirements of Rule 23, as well as to class-wide damages.**

> **A. In TCPA class actions, courts routinely require the production of "class data" like that sought through the subject discovery requests.**

The production of call logs and dialer data—the very information requested through interrogatory nos. 7-13 and requests for production nos. 7-12—is standard practice in TCPA class litigation because of its relevance to the numerosity, commonality, typicality, and predominance requirements of Rule 23. *See, e.g.*, *Thomas v. Fin. Corp. of Am.*, No. 19-152, 2019 WL 5157022, at *1 (N.D. Tex. Oct. 10, 2019) ("Outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable."); *O'Shea v. Am. Solar Sol., Inc.*, No. 14-894, 2016 WL 701215, at *3 (S.D. Cal. Feb. 18, 2016) ("Upon reviewing requests 9, 28, 29, and 30, the Court agrees that the documents sought are relevant to his action. Specifically, these requests generally concern the total number of call recipients and the total number of phone calls made to them."); *see also Gossett v. CMRE Fin. Servs.*, 142 F. Supp.

8

3d 1083, 1087 (S.D. Cal. 2015) (granting motion to compel production of outbound call lists, as such lists were "relevant to the class claims and meritorious claims and defenses in this case"); *Ossola v. Am. Express Co.*, No. 13-4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer.").[4]

Courts across the country routinely compel TCPA class action defendants to provide analogous information about the size of proposed classes, and to produce lists of telephone numbers associated with potential members of the classes.

Indeed, just last week the Southern District of Texas compelled a TCPA defendant to answer nearly identical interrogatories and produce documents responsive to related document requests, holding: "In TCPA cases, like this one, courts around the country have held that call lists and call data are relevant to establishing the Rule 23(a) elements." *Tafoya v. BMG Loansatwork, Inc.*, No. 4:25-cv-2949, 2026 WL 971629, at *3 (S.D. Tex. Apr. 8, 2026).

As the Northern District of Indiana explained:

---

[4] *See also, e.g.*, *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16-1321, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable."); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13-1556, 2014 WL 3894348, at *2 (S.D. Cal. June 12, 2014) ("the Court finds that the outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable").

> [C]ourts in class-action TCPA cases have consistently held that information regarding plaintiffs and putative class members who were called by a defendant or by others on a defendant's behalf, such as outbound call lists and the number of calls made to those recipients are relevant to the numerosity and commonality requirements listed in Rule 23. . . . Although the requested information here is not precisely a call list, it does seek to quantify the number of calls and is therefore analogous to the outbound call lists that have been found relevant to the numerosity and commonality requirements. Thus, the requested text message-related information is relevant to class certification in a way that is analogous to the relevance of call logs in these other TCPA class actions. Moreover, text messages are analogous to phone calls in other TCPA cases such that the text data requested through ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 is relevant to the Rule 23 numerosity and commonality requirements for class certification applicable in this case.

*Fralish v. Digital Media Sols., Inc.*, No. 21-45, 2021 WL 5370104, at *9-10 (N.D. Ind. Nov. 17, 2021) (compelling the production of class data in a putative TCPA class action); *accord Fralish v. Deliver Tech., LLC*, No. 20-353, 2021 WL 3285528, at *9 (N.D. Ind. Aug. 2, 2021) ("For the foregoing reasons, Plaintiff is entitled to the class related data he seeks through RFPs 7-14 & 33, and ROGs 9-15.").

The Southern District of Indiana granted a similar motion to compel in a TCPA class action despite that

> [t]he Court recognizes that the putative class is also limited to persons who were not customers or accountholders of Defendant and that the document requests at issue are not so limited. However, as Plaintiff explains in her brief, the information Plaintiff seeks is relevant to the claims or defenses in this case because it will permit Plaintiff to conduct investigation into the numbers in question and ascertain which of those numbers did not belong to Defendant's customers or accountholders at the relevant time. Thus, the Court finds the information to be discoverable.

10

*Lewis v. Register.com, Inc.*, No. 25-275, 2025 WL 2662338, at \*6 (S.D. Ind. Sept. 16, 2025); *see also Abboud v. Circle K. Stores Inc.*, No. CV-23-01683-PHX-DWL, 2024 WL 3594571, at \*1 (D. Ariz. July 31, 2024) (ordering the production of lists of telephone numbers for "all persons who received two text messages from Circle K during the relevant time period" even though the plaintiff's class definition was limited to persons "who did not provide their telephone number to Circle K.").

Likewise, here, Plaintiff seeks call data pertaining to *all* artificial or prerecorded voice calls Defendant placed (or directed) during the proposed class period. From these records, Plaintiff will use expert analysis to determine which of Defendant's calls were placed to *cellular* telephone numbers, and which were placed to individuals not likely to have been customers or accountholders of Defendant's. For example, Plaintiff can compare the telephone numbers Defendant dialed with those appearing during the same time frame in the Federal Communications Commission's Reassigned Numbers Database, indicating that the telephone numbers had been permanently disconnected and made available for reassignment at the same time Defendant was trying to reach its customers at those same numbers. In addition, reverse look up vendors can be used to compare known users of a given cellular telephone number with the name and address Defendant associates with the telephone number it called. These analyses are routine in TCPA class actions like

11

this one, and were endorsed by the district court in *Elliot* and by the Sixth Circuit in *In re Humana, Inc*. *See Elliot*, 2025 WL 1065755, at \*13.

In *Bonoan v. Adobe, Inc.*, the Northern District of California granted the plaintiff's motion to compel responses to discovery requests materially similar to the requests at issue here:

> 9.      Identify the number of unique telephone numbers to which Defendant made, or caused to be made, calls, by using an automatic telephone dialing system, a predictive dialer, or an artificial or prerecorded voice.
>
> 10.     Identify the number of unique telephone numbers to which Defendant made, or caused to be made, calls, by using the hardware or software Defendant used to place, or cause to be placed, calls to Plaintiff, or to (281) 546-9685.
>
> 11.     For the telephone numbers Defendant identifies through its answers to Interrogatory Nos. 9-10, for how many of them do Defendant's records show that a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, or that a person associated with one of the telephone numbers indicated that Defendant contacted the wrong person or telephone number?
>
> 12.     For the telephone numbers Defendant identifies through its answers to Interrogatory Nos. 9-11, to how many of them did Defendant place, or cause to be placed, a call by using an automatic telephone dialing system, a predictive dialer, or an artificial or prerecorded voice, after Defendant's records showed that a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, or that a called party indicated that Defendant contacted the wrong person or telephone number.
>
> 13.     For the telephone numbers Defendant identifies through its answers to Interrogatory Nos. 9-11, to how many of them did Defendant place, or cause to be placed, a call by using the hardware or software

12

Defendant used to place, or cause to be placed, calls to Plaintiff, or to (281) 546-9685, after Defendant's records showed that a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, or that a called party indicated that Defendant contacted the wrong person or telephone number.

14.    For the telephone numbers Defendant identifies through its answers to Interrogatories Nos. 9-13, how many of them were, or do Defendant's records indicate were, assigned to a cellular telephone service during the relevant time period?

*Compare* No. 19-168, ECF No. 47-1 at 11-15 (N.D. Cal. Oct. 4, 2019) (plaintiff's interrogatory nos. 9-11), *and id.* at ECF No. 55 at 2 ("The Court ORDERS that Defendant provide substantive answers to all Interrogatories other than 5, 10, 15 and 16 by October 31, 2019."), *and id.* at ECF No. 68 at 1 ("The Court ORDERS that Defendant must provide responses to Interrogatories Nos. 10, 11, 13 and 14."), *with* Ex. A; *see also Mbazomo v. ETourandTravel, Inc.*, No. 16-2229, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) ("Even if discovery had been phased, the Court agrees with the weight of authority on this matter that call logs and dialing lists are relevant to the commonality prong of the class certification inquiry. The requested list would also be relevant to Plaintiff's need to show numerosity.").

Also analogous, in *Bellenger v. Accounts Receivable Mgmt., Inc.*, the Southern District of Florida granted the plaintiff's motion to compel responses aimed at identifying the potential size of the plaintiff's proposed TCPA class, as well as a list of telephone numbers associated with potential members of the proposed class:

13

In Requests for Production Nos. 15 and 16, the Plaintiff sought documents "identifying or listing the telephone numbers to which [the Defendant] placed any DIALED CALL to a cellular telephone at any time on or after January 23, 2015," or documents "that record or list every DIALED CALL" made by the Defendant during that same time period, including all documents that "identify, reflect and/or evidence the number of times each such telephone number was called." The Defendant objected to these requests as overbroad, because the requests were not limited to calls placed to "wrong parties," and also stated that the requested information includes personal health information; these objections are overruled, for the reasons discussed above.

\*       \*       \*

Requests for Production Nos. 17 and 18 sought documents listing every person who received a call since January 23, 2015, and who informed the Defendant that: 1) the person did not wish to be called, or 2) that the Defendant had called a wrong number, or 3) that the person did not have a contract with the Defendant, and also a list of every call made to any person after they had provided one of the three responses above. The Defendant objected that the request was overbroad because it is not limited to cellular phones and also includes people outside the proposed class because those who did not wish to be called or who did not have a contract with the Defendant are not "wrong parties." For the reasons stated above, the Defendant's objections as to the cellular phone designation and the "wrong parties" are overruled.

The Defendant also argues that Requests Nos. 17 and 18 are overbroad because they seek information that has no bearing on whether the Defendant had prior express consent to make the calls, but the Defendant cites no precedent for such a determination. The Court overrules the Defendant's objection because if the Defendant intends to pursue its defense that it had the prior express consent of those called, then it must produce the evidence on which it will rely. "[A]t this stage of the proceeding, [the Defendant] must produce whatever evidence of prior express consent it will use to rebut [the Plaintiff's] attempt to establish predominance under Federal Rule of Civil Procedure 23(b)(3) so the issue can fully be litigated during the class certification phase of this case." *See, e.g., Medina v. Enhanced Recovery Company, LLC*, No.

14

15-14342-CIV-MARTINEZ/MAYNARD, 2017 WL 5196093, *8 (S.D. Fla. Nov. 9, 2017).

In summary, the Defendant's objections addressed above each are overruled, and the Plaintiff is entitled to the information she seeks.

No. 19-60205, 2019 WL 4284070, at *5-6 (S.D. Fla. Sept. 10, 2019); *see also*

*Warren v. Credit Pros Int'l Corp.*, No. 20-763, 2021 WL 3552254, at *8 (M.D. Fla.

Apr. 26, 2021) ("Plaintiff is also entitled to receive—prior to class certification—

the documents and information related to the call logs, transmission summaries,

outbound call lists, and the information contained therein bearing on Defendant's

communications with the putative class members, because Defendant has not moved

to bifurcate class and merits discovery and such information is relevant both to the

merits of Plaintiff's claims and to the numerosity and commonality requirements in

Rule 23, Fed. R. Civ. P.").

For the same reasons, this Court should compel Defendant to respond

completely to interrogatory nos. 7-13 and request for production nos. 7-12.[5]

**B. Defendant's objections lack merit and should be overruled.**

Defendant objects to the subject discovery requests on a number of grounds,

including that that they are overly broad, unduly burdensome, and premature. These

objections are unsubstantiated and without merit.

---

[5]     In addition to its relevance to the Rule 23 factors, the number of class members and the violative calls each received are directly relevant to damages, which are calculated on a per-violative-call basis. 47 U.S.C. § 227(b)(3)(B).

### 1. The subject discovery is not overly broad or premature.

As to breadth, Defendant contends—without support—that each subject interrogatory and request for production is overly broad. *See* Ex. A. To be clear, through his subject requests, Plaintiff seeks *Defendant's own* call records, pertaining to calls that Defendant placed itself.

Rule 34 of the Federal Rules of Civil Procedure requires that a party responding to a request for production must either state that inspection of documents and related activities will be permitted as requested, or state an objection, including the specifics of the objection and whether any responsive documents are being withheld. Fed. R. Civ. P. 34(a), (b)(2)(B). Generic, boilerplate objections to discovery are not sufficient. *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209-210 (E.D. Mich. 2018) ("Boilerplate objections are legally meaningless and amount to a waiver of an objection.") (citing *Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court.")); *accord Nelson v. I.Q. Data Int'l., Inc.*, No. 22-12710, 2025 WL 1271924, at *2 (E.D. Mich. Jan. 28, 2025) (same); *A. Fraber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (general or boilerplate objections such as "overly burdensome and harassing" are

16

improper). An "evasive or incomplete . . . answer, or response must be treated as a failure to . . . answer, or respond." Fed. R. Civ. P. 37(a)(3).

In any event, Plaintiff seeks lists of telephone numbers and the number of them, along with lists of related telephone calls to the subject telephone numbers and the number of them. The information sought is not overly broad as it relates directly to the numerosity, typicality, commonality, and predominance elements of Rule 23. *See, e.g.*, *Cahill v. GC Servs. Ltd. P'ship*, No. 17-1308, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) ("RFPs 10-13 and 18 are relevant at least to the issues of numerosity and commonality. The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a), for which plaintiff must show the class 'suffered the same injury . . . such that the . . . class claims will share common questions of law or fact with those of the named plaintiffs.'"); *Webb v. Healthcare Revenue Recovery Grp. LLC*, No. 13-737, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014) (compelling production of outbound call lists).

As to timing, Plaintiff necessarily requires this information *prior to* a determination on class certification, as he must use this discovery to support his certification motion. *See Tafoya*, 2026 WL 971629, at *4 ("BMG tries to resist this

17

conclusion by arguing that discovery should be limited before class certification, essentially echoing its written objection that '[d]iscovery to ascertain information about unnamed class members before class certification is generally improper.' ECF No. 24 at 3–4; ECF No. 20 at 18 (BMG's written objections). That is incorrect."). To be sure, "the fact that a disputed discovery request may reveal contact information for putative class members prior to a ruling on any motion for class certification is not fatal to the discovery request." *Id*.

Correspondingly, Plaintiff's discovery requests are not premature, and numerous courts have compelled similar discovery before any class has been certified. *See, e.g.*, *Lewis*, 2025 WL 2662338, at *6; *Fralish*, 2021 WL 5370104, at *9-10.

### 2. Defendant offers zero evidence that responding to the subject discovery would be unduly burdensome.

As to burden, the party "claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Laryngeal Mask Co. v. Ambu A/S*, No. 07-1988, 2009 WL 10672487, at *2 (S.D. Cal. Jan. 27, 2009); *see also DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."). "Conclusory or speculative statements of harm, inconvenience, or expense are

plainly insufficient." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016).

Here, Defendant makes no effort to support its repeated burden-based objections. *See* Ex. A. To be sure, Defendant has not substantiated why the information Plaintiff seeks is sufficiently burdensome such that Defendant should not be required to produce it, especially given the call records' relevance to class certification and Defendant's chosen litigation strategy to contest the elements of Rule 23. *See* ECF No. 15, PageID.139 ("This case may not be maintained as a class action because Plaintiff has not and cannot establish the existence of each of the requirements under Federal Rule of Civil Procedure 23. PHRG opposes class certification and disputes the propriety of class action treatment for reasons that include, but are not limited to, the lack of commonality, predominance, superiority, adequacy, ascertainability, and typicality among Plaintiff and the putative class members.").

Nor has Defendant offered any explanation as to what steps it took to investigate how it could obtain the requested information, what that process would look like, or why that process is so extremely burdensome that Defendant should be excused entirely from responding to the requests. Given as much, Defendant's generalized statements of burden are insufficient. *See, e.g., Tafoya*, 2026 WL 971629, at *5 ("Yet, BMG fails to explain— much less prove—how or why

19

compiling that evidence would be overly burdensome or disproportionate to the needs of the case. The Court finds these unsubstantiated boilerplate objections inadequate to resist discovery and therefore overrules them."); *accord Bayles v. The Hertz Corp.*, No. 22-1092, 2023 WL 7448841, at *3 (S.D. Ind. Nov. 9, 2023) (compelling the production of call recordings and related transcripts in a TCPA class action, noting, "[a]s an initial matter, when considering the issue of proportionality, the Court gives minimal consideration to the time needed to download the calls from Defendant's system. Defendant chose a vendor who could not batch download call recordings and cannot now complain that its system is inconvenient to use.").

At bottom, interrogatory no. 7 and request for production no. 7 seek the number of unique telephone numbers to which Defendant placed a call, in connection with which an artificial or prerecorded voice was used, during the proposed class period, as well as documents sufficient to identify those telephone numbers. Interrogatory nos. 8-13 and request for production nos. 8-12 then seek subsets of similar data to allow Plaintiff to identify those telephone numbers assigned to a cellular service, those artificial or prerecorded voice calls Defendant placed to the telephone numbers, and the identities of the intended recipients.

Defendant has refused to produce both the broader set of data sought through interrogatory no. 7 and request for production no. 7, and the narrower subsets of data sought through the remaining requests. But Defendant cannot have it both ways.

20

If, because it believes the burden too great, Defendant will not undertake the analysis on its own to identify the *cellular* telephone numbers belonging to non-customers to which it placed artificial or prerecorded voice calls, it must instead produce *all* telephone numbers to which it attempted to deliver an artificial or prerecorded voice message, and the names and contact information of the persons it intended to reach with its calls.[6] Plaintiff can then utilize an expert witness to identify which of those telephone numbers were assigned to a cellular telephone service and associated with persons other than those Defendant attempted to reach. In other words, Defendant can produce its fuller sets of call data and have Plaintiff perform the analysis if Defendant does not want to do so itself. *See, e,g.*, *Elliot*, 2025 WL 1065755, at *13.

### 3. Defendant's contention that whether it utilizes a prerecorded voice is a legal conclusion shielding it from its discovery obligations is unserious.

Finally, Defendant claims that determining whether a call was made with an artificial or prerecorded voice constitutes a legal conclusion and, as a result, it should not have to identify such calls it placed. Not so. *See Bonoan v. Adobe, Inc.*, No. 19-cv-01068-RS (SK), 2019 WL 5690631, at *1 (N.D. Cal. Oct. 29, 2019) (granting motion to compel in TCPA class action and overruling the defendant's objection

---

[6]    "The disclosure of phone numbers and names does not constitute a serious invasion of privacy and is commonplace in class actions." *Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-1540, 2015 WL 1138469, at *3 (S.D. Cal. Mar. 13, 2015).

because "[t]he term 'artificial or prerecorded voice' does not call for a legal conclusion" and "[d]etermining whether a voice is artificial or prerecorded does not require legal analysis.").

In any event, Defendant certainly is aware that it places calls with an artificial or prerecorded voice—as opposed to having a human deliver a live message—and can identify those calls and calling campaigns that utilized such technology.

## II. Defendant cannot be permitted to refuse to provide class-related discovery while simultaneously contesting class certification.

Defendant vigorously contests that Plaintiff can meet each of the elements of Rule 23, which it has every right to do. What Defendant cannot be permitted to do, however, is oppose Plaintiff's efforts to certify a class while both (a) refusing to identify all telephone numbers of non-customers it may have called at a wrong number, and how many such calls it made to them, and (b) refusing to provide its broader call data so that Plaintiff can conduct such an analysis on his own. *See Central Alarm Signal, Inc. v. Business Fin. Servs., Inc.*, No. 14-14166, 2016 WL 3595627, at *2 (E.D. Mich. July 5, 2016) (granting motion to compel in putative TCPA class action, in part, because "the Court cannot permit [Defendant] on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified."); *accord Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12-5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) ("As we made clear to Quill in multiple court hearings, the Court cannot permit Quill

on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified.").

Likewise here, because Defendant contests each element of Rule 23, it must provide all requested calling data so that Plaintiff can meet his evidentiary burden.

### Conclusion

Because of the subject discovery requests' high relevance to class certification and damages, and given the resulting routine production of similar material in TCPA matters like this one, Plaintiff respectfully requests that this Court compel Defendant to provide complete answers to Plaintiff's interrogatory nos. 7-13 and documents responsive to his requests for production nos. 7-12.

Defendant's largely repetitive objections are unsubstantiated, lack detail, and are formulaic. This Court should overrule them in their entirety. *Tafoya*, 2026 WL 971629, at \*2 ("Copy-and-pasted boilerplate objections are not sufficient.").

RESPECTFULLY SUBMITTED AND DATED this April 14, 2026.

> *s/ Michael L. Greenwald*
> Michael L. Greenwald
> GREENWALD DAVIDSON RADBIL PLLC
> 5550 Glades Road, Suite 500
> Boca Raton, FL 33431
> Telephone:  (561) 826-5477
> Email:  mgreenwald@gdrlawfirm.com
>
> Anthony Paronich
> PARONICH LAW, P.C.
> 350 Lincoln Street, Suite 2400

23

Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100
Email:  anthony@paronichlaw.com

George T. Blackmore
BLACKMORE LAW PLC
1100 Owendale Drive, Suite M
Troy, MI 48083
Telephone:  (888) 835-2993
Facsimile:  (508) 318-8100
Email:  george@blackmore.law

*Attorneys for Plaintiff and the Proposed Class*

24

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| NATHAN JAMES MASSARELLO, on behalf of himself and others similarly situated, | Case No.: 2:24-cv-12480-RJW-CI |
| | Honorable Robert J. White |
| Plaintiff, | |
| v. | Magistrate Judge Curtis Ivy, Jr. |
| POWER HOME REMODELING GROUP, LLC, | |
| Defendant. | |

**BRIEF FORMAT CERTIFICATION FORM**

I, Michael Greenwald, certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are filed in searchable PDF format, *see* Case Management Requirements § III.A;

☒ except for footnotes and necessary block quotes, the brief is double spaced (not "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety (not in minuscript), *see* Case Management Requirements § III.A;

25

⊠ if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, *see* Case Management Requirements § III.B.

I also acknowledge that my brief will be stricken from the docket if the Court later finds that these requirements are not met.

/s/ *Michael Greenwald*
Michael Greenwald
Attorney for Plaintiff

26